## IN THE MATTER OF Y. Y. HIROSE, doing business under the name of HIROSE SHOTEN.

### January 8, 1906.

*Sale.—Payment.—Delivery:*    In a proposition for selling goods, where the understanding is that the goods will be delivered to the proposed purchaser upon his payment of the price therefor, the failure of the proposed purchaser to pay absolves the proposed seller from any obligation to deliver.

*Same—Invoices in the Name of Proposed Buyer:*    The proposed seller invoiced the goods in the name of the proposed buyer, but mailed the invoices to his own agent, and instructed the proposed buyer by mail that if he would pay the price of the goods to the agent he could get the invoices from him.    *Held,* that the fact that the invoices were made out in the ·name of the proposed buyer, conferred no title on him under the circumstances.

In Bankruptcy:    Question of Title to Certain Goods. . .

F. E. Thompson, For the Motion.
Chas. F. Clemons, Contra.

Dole, J.    A petition was filed in this court on the 23rd day of March, 1904, by H. Hackfeld & Co., Ltd., Hoffschlaeger Company, Ltd., and the Seattle Brewing & Malting Co., praying' that one Y. Y. Hirose, doing business under the name of Hirose Shoten, be adjudicated a bankrupt, and on the 5th day of May, 1904, the petition was granted and adjudication made. (*Ante.* p. 111).

Pending the proceedings, the court, in response to a petition by said Seattle Brewing & Malting Co., made an order on the 29th day of March, 1904, directing that certain property seized by the United States marshal and alleged to belong to the said alleged bankrupt, to wit, eighty tubs of sake, be sold, the same being perishable goods; and thereafter, on the 8th day of June, 1904, Chas. F. Clemons, trustee in bankruptcy of the said bankrupt estate, claiming to own the said property and proceeds of the sale thereof as such trustee, and F. E. Thompson, attorney for the Urabi Brewing Co., a corporation of the Empire of Japan, which corporation claimed the said property and the proceeds of such sale thereof, petitioned this court for the determination of such controversy, praying that the petition be heard by the judge of this court or by some referee to be appointed therefor, and for such other and further relief as the premises might require.    The matter was thereupon referred to Wm. T. Rawlins, referee in bankruptcy of this court, to report facts and findings as prayed for in said petition.    The referee filed his report on August 30th, 1905, to the effect that the Urabi Brewing Co. never parted with its title in the said eighty tubs of sake, and that the trustee of Y. Y. Hirose, a bankrupt, is not entitled to the funds now in the hands of the United States marshal.

·Thereupon, the Urabi Brewing Co., by its attorney, F. E. Thompson, moved the court for an order confirming and approving the said report of the referee and directing the clerk of this court to pay to the Urabi Brewing Co., or its attorney, the proceeds of the sale of the said sake.    The motion was heard, counsel on both sides being present and making argument and referring to authorities.

From the evidence which was taken in the bankrupt proceedings relating to the question of the ownership of the sake at the time of its seizure by the marshal, the story is briefly as follows:  The Urabi Brewing Co., doing business in Japan, shipped the said sake to Honolulu, invoicing it in the name of Hirose, but mailing the invoices to their agent in Honolulu, a Japanese named Doyo, with instructions to him to deliver it to Hirose upon his paying therefor.  Hirose was unable to pay, and, to accommodate the Urabi Brewing Co., signed the necessary papers for taking it out of the Custom House, the agent of the Urabi Brewing Co., Doyo, paying the duties therefor. The trustee contests such a construction of the evidence, claiming that there was evidence showing that Hirose had paid the duty and taken out the goods.  The evidence tending to such a conclusion was by Custom House employes and was vague and uncertain.  The testimony of other witnesses, particularly that of Hirose himself, over-weighs such evidence and satisfies me that the history of the case is as I have stated.  Hirose had evidently, from the evidence, previously done business with the Urabi Brewing Co., but becoming involved they took the precaution of sending the invoices, which were in Hirose's name, to their agent, with instructions to hold them until Hirose should pay for them.  As was explained, they were made in Hirose's name as they did not wish to enter into the business of selling sake in the Hawaiian Islands and paying the license therefor.

It is clear to me that, under the circumstances, no title in the sake passed to Hirose, the arrangement being that the delivery of the invoices which would confer title should depend upon his payment of the invoice price, and that failing the other part of the understanding also fell through.  This understanding was based on a proposition made by the Urabi Brewing Co., written to Hirose on a postal card, that if he paid the price to Doyo he could get the papers from him.

"Where both parties are to do something simultaneously, as, for example, where the seller is to deliver and the buyer is to

pay the price, these are concurrent conditions, and neither party can maintain an action for breach of contract without averring that he performed or offered to perform what he himself was bound to do." *21 Am. & Eng. Encl. Law* (1st. Ed.) 629; 1 *Benjamin on Sales* (Corbin's Ed.), Sec. 327; *Watjen v. Green,* 48 N. J. Eq., 329.

The trustee called attention to certain testimony by the witness Ono, on his direct examination, that it was agreed between Hirose and Doyo "to let the agent (Doyo) of Urabi (The Urabi Brewing Co.) draw that sake out of the Custom House in the name of Hirose or otherwise protected, that if Doyo makes any profits on this merchandise that he will make some, turn over some possibly to the estate." And by the same witness on cross-examination, as follows: Q. You "testified that Doyo promised in case a profit was to be made to turn the profit over to the estate? A. Yes. * * * Q. What was the reason of your agreement to turn over the profit to Hirose's estate? A. Well, just because in this country that license law is in force. The man who—a man can't transact any legal business without paying a license, and this Urabi Co. has not paid any license, and besides that the bill of lading was in the name of Hirose, and also that if the estate does not agree with, why the goods got to be sent back to Japan. As matter of accommodation I thought it is only just and fair for Doyo to pay in some amount of money to the estate and give consent."

No information was asked for from Doyo or Hirose on this point and none given. I consider this evidence to be too vague and indefinite to support a claim for the profits or a part of them.

The report of the referee is therefore confirmed and the court will sign an order directing the marshal to pay to the Urabi Brewing Co., or its attorney, the net proceeds of the sale of the said sake.